IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:18-CV-28-D

MICHAEL DON AMOS,                    )
                                     )
                    Plaintiff,       )
                                     )
        v.                           )          ORDER
                                     )
BILL WELLES, and DOUG HENRY          )
BUICK GMC, INC.,                     )
                                     )
                    Defendants.      )

On March 27, 2018, Michael Don Amos ("Amos" or "plaintiff"), proceeding pro se, filed suit

against Bill Welles ("Welles") and Doug Henry Buick GMC, Inc. ("Henry Buick GMC," or

"defendant") alleging that Welles and Henry Buick GMC violated Title VII of the Civil Rights Act

of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII") and the American with Disabilities Act, 42 U.S.C.

§§ 12111, et seq. ("ADA") [D.E. 5]. Amos alleges that Welles planned to transfer Amos from his

role as general sales manager for Henry Buick GMC to another sales position at Doug Henry of

Kinston, Inc., and ultimately fired Amos, because of his "health issues." See id. at 2–4; [D.E. 5-1]

1. On October 25, 2018, this court dismissed Amos's Title VII and ADA claims against Welles and

dismissed Welles from the action [D.E. 29]. The court also notified Amos that he could file an

amended complaint alleging Title VII violations against Henry Buick GMC, but if he failed to do

so, any Title VII claim against the company is dismissed. See id. at 3. Amos did not file an

amended complaint. Thus, only the ADA claim against Henry Buick GMC remains.

On July 9, 2019, Henry Buick GMC moved for summary judgment [D.E. 48] and filed a

memorandum and documents in support [D.E. 49, 50, 51, 52]. Henry Buick GMC argues that it

terminated Amos's employment because of Amos's subpar work performance, poor relationship with a co-worker, and a profanity-laden phone conversation with Welles. See Def.'s Mem. Supp. Summ. J. [D.E. 49] 4–10. On the same date, the court notified Amos about defendant's motion for summary judgment, the response deadline, and the consequences of failing to respond [D.E. 52]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On September 5, 2019, Amos replied in opposition [D.E. 57] and filed several documents [D.E. 58, 59, 60]. As explained below, the court grants Henry Buick GMC's motion for summary judgment.

I.

Doug Henry ("Henry") owns numerous car dealerships bearing his name in eastern North Carolina, including Henry Buick GMC. See Doug Henry Dep. [D.E. 52-6] 4. On February 22, 2016, Doug Henry of Kinston, Inc, hired Amos as a sales manager, an at-will position. See [D.E. 51] ¶ 1;[1] [D.E. 52-8]; Amos Dep. [D.E. 60-6] 10, 23. Before his hiring, both the general sales manager,

---

[1] Under Local Civil Rule 56.1, a party opposing a motion for summary judgment shall submit "a separate statement including a response to each numbered paragraph in the moving party's statement [of material facts]." Local Civ. R. 56.1 (a)(2). "Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Id. "Each statement by the movant or opponent . . . must be followed by citation to evidence that would be admissible, as required by Federal Rule of Civil Procedure 56(c)." Local Civ. R. 56.1(a)(4). Under Rule 56(c), a party disputing a material fact must support its position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(a)(b). Merely responding that a party "disputes" a material fact is insufficient under Rule 56 and Local Rule 56.1. See Howard v. Coll. of the Albermarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C.), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished).

Amos's response to defendant's motion for summary judgment violates Local Rule 56.1 because Amos's separate statement of material facts fails to respond to each numbered paragraph in defendant's statement of material facts. See [D.E. 58]. Thus, to the extent that Amos does not oppose any statement of material fact by citing to particular parts of the record or showing that

2

Ross Mills ("Mills"), and the general manager, Welles, interviewed Amos. See [D.E. 51] ¶ 2; see also Welles Dep. [D.E. 60-1] 4–5; Mills Dep. [D.E. 60-2] 3–4; cf. [D.E. 58] 2. On the date of hiring, Amos signed a "Receipt & Acknowledgment of DH Auto Group Employee Handbook." [60-16]; see [D.E. 51] ¶ 5; cf. [D.E. 58] 2. Under the heading "Personal Conduct," the handbook states: "Improper conduct by and between employees and/or by and between employees and business associates on company premises or adversely affecting our work will not be tolerated. Any employee demonstrating improper conduct will be subject to disciplinary action including termination of employment." [D.E. 52-7] 8; see [D.E. 51] ¶ 5; cf. Amos Dep. 23; [D.E. 58] 2. The handbook lists as an example of "unacceptable behaviors" the "use of vulgar or profane language, derogatory comments, slurs, or verbal intimidation while on company property." [D.E. 52-7] 10; see [D.E. 51] ¶ 6; cf. Amos Dep. 23–24; [D.E. 58] 3. These behaviors "will generally result in disciplinary action, including immediate discharge." [D.E. 52-7] 10; see [D.E. 51] ¶ 6; [D.E. 58] 3.

On April 1, 2016, Amos was transferred to work as a sales manager at the Henry Buick GMC dealership in Goldsboro. See [D.E. 51] ¶¶ 8–10; Amos Dep. 25–26. At the end of 2016, Welles promoted Amos to General Sales Manager, where Amos reported directly to Welles. See [D.E. 51] ¶¶ 11–13. Very soon into Amos's tenure as General Sales Manger, Welles became dissatisfied with Amos's performance. Specifically, Welles observed Amos employ a sales practice with which he disagreed and received complaints about Amos's job performance from Henry and employee Tony

---

defendant cannot support its position based on evidence in the record, the court deems the material fact admitted. See Horton v. Methodist Univ., Inc., No. 5:16-CV-945-D, 2019 WL 320572, at *1 n.1 (E.D.N.C. Jan 22, 2019) (unpublished), aff'd, 788 F. App'x 209 (per curiam) (unpublished); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard, 262 F. Supp. 3d at 329 n.1.

Mallard. See [D.E. 51] ¶ 14–29; cf. [D.E. 58] 4–8.[2] Additionally, Henry Buick GMC's customer service ratings fell below the dealer-imposed target ratings. See [D.E. 51] ¶¶ 30–32. In February 2017, as Welles considered transferring Amos, Mickey White, Sr. ("White") approached Welles seeking a sales manager job at Henry Buick GMC. See [D.E. 51] ¶¶ 34–36; cf. [D.E. 58] 10–11. Later in February 2017, Welles hired White as General Sales Manager at Henry Buick GMC and spoke with Mills about transferring Amos back to the Doug Henry of Kinston, Inc., store as a sales manager. See [D.E. 51] ¶¶ 38–40; cf. [D.E. 58] 11. Welles planned for Amos's seniority, salary, and benefits at Doug Henry of Kinston, Inc., to match his seniority, salary, and benefits at the Henry Buick GMC store. See [D.E. 51] ¶ 41; cf. [D.E. 58] 11–12.

On March 6, 2017, White began working as General Sales Manager at Henry Buick GMC. See [D.E. 51] ¶ 43. On the same date, Amos was scheduled to leave for vacation. See id. at ¶ 42. Welles planned to notify Amos of his transfer to Doug Henry of Kinston, Inc., after Amos returned from vacation. See id. at ¶¶ 42–44. Another employee, however, told Amos that he had been replaced as General Sales Manager. See id. at ¶ 45. Amos then contacted Welles via text message and called Welles at the Henry Buick GMC store (the "March 6 call"). See id. at ¶¶ 46–47. In the March 6 call, Amos thought he had been fired and cursed and yelled at Welles. See id. at ¶ 48; cf. [D.E. 58] 12–13. When Welles explained that he planned to transfer Amos to Doug Henry of Kinston, Inc., Amos again directed "very vulgar language" toward Welles. [D.E. 51] ¶ 48; cf. [D.E. 58] 12–13. After this interaction, and while still on the phone with Amos, Welles decided to terminate Amos's employment because he believed that Amos's actions violated company policies.

---

[2] Amos's response to Welles's observation notes only that the instance was not documented, and the business practice was acceptable. See [D.E. 58] 5. Amos's response does not create a genuine issue of material fact.

4

See [D.E. 51] ¶¶ 48–49; cf. [D.E. 58] 12–13. After Welles communicated his decision, Amos directed more profane language at Welles. See [D.E. 51] ¶ 50; cf. [D.E. 58] 13–14.

Amos argues that, before the March 6 call, he had informed Welles "of some health issues" he was experiencing and that he was "undergoing evaluation for the health issues." [D.E. 5] 4; see Amos Dep. 29–32; [D.E. 60-7]. Amos claims that Henry Buick GMC, through Welles, terminated his employment because Henry Buick GMC regarded Amos as being disabled and thereby violated the ADA. See [D.E. 5] 3. Henry Buick GMC responds that it terminated Amos due to Amos's conduct during the March 6 call with Welles. See [D.E. 49] 1–2.

## II.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

Conjectural arguments will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir.1985) ("The nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Nor will a "mere . . . scintilla of

5

evidence in support of the [nonmoving party's] position . . . be [ ]sufficient; there must be evidence

on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S.

at 252. In evaluating materials submitted in support of or in opposition to a motion for summary

judgment, the court may reject inadmissible evidence described in such materials. See Fed. R. Civ.

P. 56(c); Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir.1996); Williams v.

Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

## A.

Amos has alleged no direct evidence of illegal discrimination under the ADA, and thus relies

on the burden-shifting framework described in McDonnell Douglas Corp. v. Green, 411 U.S. 792

(1973). See Raytheon Co. v. Hernandez, 540 U.S. 44, 49 n.3 (2003). To survive summary judgment

on his ADA claim, Amos must "produce evidence sufficient to demonstrate that (1) he was a

qualified individual with a disability; (2) he was discharged; (3) he was fulfilling his employer's

legitimate expectations at the time of discharge; and (4) the circumstances of his discharge raise a

reasonable inference of unlawful discrimination." Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143,

150 (4th Cir. 2012) (quotations and alterations omitted); see Rohan v. Networks Presentations LLC,

375 F.3d 266, 272 n.9 (4th Cir. 2004); Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001);

Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir. 2001).[3] Henry Buick GMC admits

that it discharged Amos, but argues that Amos fails to raise a genuine issue of material fact as to the

---

[3] Although this order includes citations to cases applying the ADA before the ADA
Amendment Act of 2008 ("ADAAA"), the court has applied the ADAAA to Amos's ADA claim.
See, e.g., 42 U.S.C. § 12102(3); 29 C.F.R. § 1630.2(l)(1); Olsen v. Capital Region Med. Ctr., 713
F.3d 1149, 1154 (8th Cir. 2013); Reynolds, 701 F.3d at 150–52.

6

other elements of his prima facie case.[4]

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. §12102(1); see 29 C.F.R. § 1630.2(g)(l). Section 12102(3), in turn, states:

> For purposes of paragraph (1)(c):
>
> (A) An individual meets the requirements of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.
>
> (B) Paragraph 1(c) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

42 U.S.C. § 12102(3). Under section 12102(3), which Congress added in the ADAAA, an individual bringing a "regarded as" claim need only show that an employer subjected him to an action that the ADA prohibits because of an actual or perceived impairment regardless of whether the employer perceived the impairment to limit the individual in a major life activity. See 42 U.S.C. § 12102(3); 29 C.F.R. § 1630.2(l)(1); Olsen, 713 F.3d at 1154; Gecewicz v. Henry Ford Macomb Hosp. Corp., 683 F.3d 316, 321–23 (6th Cir. 2012); Harris v. Reston Hosp. Ctr., LLC, No. 1:10-cv-1431, 2012 WL 1080990, at *3–5 (E.D. Va. Mar. 26, 2012) (unpublished). Thus, a "regarded as" claim under

---

[4] For the first time in this case, Amos argues in his response brief that he suffers from an "actual disability" under the ADA. See [D.E. 57-1] 10. Plaintiffs may not, however, raise "new claims without amending their complaints after discovery has begun." Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 (4th Cir. 2008) (unpublished); see Wahi v. Charleston Area Med. Ctr., 562 F.3d 599, 617 (4th Cir. 2009) (collecting cases); Cloaninger ex rel. Estate of Cloanger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009) (collecting cases). Accordingly, the court does not address Amos's actual disability claim.

the ADAAA is much easier to prove than a "regarded as" claim before the ADAAA. Cf. Young v. United Parcel Service, Inc., 707 F.3d 437, 443–44 (4th Cir. 2013) (analyzing a pre-ADAAA "regarded as" claim), amended and superseded by, 784 F.3d 192 (4th Cir. 2015); Rohan, 375 F.3d at 277–78 (same); Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 471 n.5 (4th Cir. 2002) (same); Davis v. Univ. of N.C., 263 F.3d 95, 99–101 (4th Cir. 2001) (same); Rhoads, 257 F.3d at 390–91 (same); Haulbrook, 252 F.3d at 703–05 (same).

As for Amos's "regarded as" claim, Amos testified that he did not have any "hard evidence" that Henry Buick GMC fired him because of his perceived disability. Amos Dep. 45. Rather, Amos relies on his allegation that Welles and others at Henry Buick GMC knew about his "health issues" before the March 6 phone call, see id. at 12–13, 45, 48, 49, and argues that Welles terminated his employment so that Henry Buick GMC "would not have to accommodate his disability." [D.E. 57-1] 2; Amos Dep. 43–44, 44, 48.

Amos fails to cite any evidence to support his assertion that Henry Buick GMC regarded Amos as disabled. See Amos Dep. 48. Moreover, assuming arguendo that Welles knew of Amos's "health issues" at the time of his transfer or termination, Henry Buick GMC's mere knowledge of Amos's "health issues" cannot establish that Henry Buick GMC regarded Amos as disabled. See Haulbrook, 952 F.3d at 703–04; Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996); Wigger v. CVS Pharmacy, No. 2:15-cv-01122-DCN-MGB, 2017 WL 9471790, at *7 (D.S.C. July 21, 2017) (unpublished), report and recommendation adopted by, 2017 WL 4296724, (D.S.C. Sep. 27, 2017) (unpublished); Howell v. Holland, No. 4:13-cv-00295-RBH, 2015 WL 751590, at *17 (D.S.C. Feb. 23, 2015) (unpublished). Accordingly, there is no genuine issue of material fact as to the first element of Amos's prima facie case.

Alternatively, Amos fails to create a genuine issue of material fact about whether he was fulfilling Henry Buick GMC's legitimate expectations when Henry Buick GMC decided to transfer him to another store or when Henry Buick GMC (through Welles) terminated his employment. Amos must demonstrate that "he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative." Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 515 (4th Cir. 2006) (quotation omitted). Whether Amos was fulfilling his employer's legitimate expectations at the time of adverse employment action is analyzed from the perspective of the employer. See King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003); see also Spease v. Pub. Works Comm'n, 369 F. App'x 455, 456 (4th Cir. 2010) (per curiam) (unpublished). If Amos meets his initial burden, "the employer may counter with evidence defining the [legitimate job] expectations as well as evidence that the employee was not meeting those expectations." Warch, 435 F.3d at 516.

As for Henry Buick GMC's transfer decision, the transfer decision was not adverse employment action. See Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007); James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375–76 (4th Cir. 2004); Boone v. Goldin, 178 F.3d 253, 255–56 (4th Cir. 1999); Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (en banc); Walls v. Pitt Cty. Bd. of Educ., No. 4:13-CV-104-D, 2015 WL 4994259, at *5–6 (E.D.N.C. Aug. 19, 2015) (unpublished); Williams v. Brunswick Cty. Bd. of Educ., 725 F. Supp. 2d 538, 547 (E.D.N.C. 2010), aff'd 440 F. App'x 169 (4th Cir. 2011) (per curiam) (unpublished). It was a lateral transfer with no change in seniority, salary, or benefits. Thus, the transfer claim fails.

Alternatively, even if the transfer was adverse employment action, the claim still fails. Amos primarily argues that Welles's choice to not discipline or counsel Amos before deciding to transfer him is evidence that Amos was meeting Henry Buick GMC's legitimate employment expectations. See [D.E. 57-1] 3, 10; cf. [D.E. 5] 4. This negative inference, however, without more, cannot "rule

9

out the possibility" that Henry Buick GMC transferred him for subpar performance. Warch, 435 F.3d at 515. Moreover, Amos's self-assessment of his job performance adds nothing to the analysis. See Evans, 80 F.3d at 960–61; Hawkins v. PepsiCo, Inc., 203 F.3d 274, 281 (4th Cir. 2000). Furthermore, the lack of written notices or disciplinary proceedings against Amos, alone, cannot rule out Amos's possible subpar performance. See Lapsely v. Columbia Univ., 999 F. Supp. 506, 521 (S.D.N.Y. 1998); cf. Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 574–75 (4th Cir. 2015); E.E.O.C. v. Dollar General Corp., 252 F. Supp. 2d 277, 287 (M.D.N.C. 2003). Henry Buick GMC adequately defines its job expectations and produced evidence that Welles and Henry Buick GMC management did not believe Amos achieved those expectations before the transfer decision. See Amos Dep. 26; Welles Dec. [D.E. 50] ¶ 9; cf. Def.'s Mem. Supp. Summ. J. 4–8; cf. King, 328 F.3d at 149. Additionally, Henry Buick GMC's justification for its transfer decision has remained consistent. Cf. E.E.O.C. v. Sears Roebuck & Co., 243 F.3d 846, 852–53 (4th Cir. 2001).

As for Henry Buick GMC's termination decision, Amos concedes that Welles believed Amos's behavior on the March 6 call violated Henry Buick GMC's policies. See [D.E. 51] ¶ 49; cf. [D.E. 58] 13–14. Moreover, at the time of the March 6 call, Amos was aware of Henry Buick GMC's employment policies and acknowledges that "yelling and cussing at his manager is an example of improper conduct" under those policies. [D.E. 51] ¶¶ 55–56; cf. [D.E. 58] 14. An employer does not violate the ADA when it "discharges an individual based upon the employee's misconduct." Jones v. Am. Postal Workers Union, 192 F.3d 417, 429 (4th Cir. 1999); Pence v. Tenneco Auto. Operating Co., 169 F. App'x 808, 810–12 (4th Cir. 2006) (per curiam) (unpublished); see also Pernice v. City of Chicago, 237 F.3d 783, 785–86 (7th Cir. 2001); Williams v. Widnall, 79 F.3d 1003, 1007 (10th Cir. 1996). Accordingly, even viewing the evidence in the light most favorable to Amos, Amos was not meeting Henry Buick GMC's legitimate expectations at the time

of any adverse employment action. Thus, no genuine issue of material fact exists as to the third element of Amos's prima facie case.

B.

Alternatively, even if Amos established a prima facie case of discrimination under the ADA, Henry Buick GMC provides a legitimate, non-discriminatory reason for deciding to transfer Amos and then terminating Amos's employment. An employer's burden of providing a legitimate, non-discriminatory reason is one of production, not persuasion. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). An employer must present its legitimate, non-discriminatory reason "with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255–56 (1981). For example, an employer's honest belief that another candidate is better qualified due to that employee's job performance and experience is a legitimate, non-discriminatory reason for choosing to hire one candidate over another candidate. See Evans, 80 F.3d at 960; Young v. Lehman, 748 F.2d 194, 198 (4th Cir. 1984).

Henry Buick GMC contends that it decided to transfer Amos because of his poor job performance, negative attitude in the workplace, and White's qualifications. See [D.E. 49] 7–8, 15–17. Henry Buick GMC decided to terminate Amos because of his cursing and yelling at Welles on the March 6 call. See id. at 18–19.

Poor job performance alone constitutes a legitimate, non-discriminatory reason for transferring and then discharging Amos. See Hawkins, 203 F.3d at 279–80. As discussed, Amos has failed to create a genuine issue of material fact on his subpar performance while working at Henry Buick GMC. Accordingly, Henry Buick GMC has met its burden of production and the burden shifts to Amos to show that there is a genuine issue of material fact about whether Henry

11

Buick GMC's justification is pretextual.

A plaintiff can demonstrate pretext by showing that the alleged non-discriminatory "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [disability] discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted). In conducting this analysis, the court does not decide whether the employer in fact discriminated against the plaintiff on the basis of disability. See, e.g., Holland v. Washington Homes, Inc., 487 F.3d 208, 217–18 (4th Cir. 2007); Hawkins, 203 F.3d at 279–80. Rather, the analysis focuses on whether the plaintiff has raised a genuine issue of material fact as to pretext under Reeves and its Fourth Circuit progeny.

Amos has failed to present sufficiently probative evidence to suggest that Henry Buick GMC's stated reasons for transferring or discharging him was pretextual. Amos argues that Welles knew about his alleged "health issues" at the time of transfer and termination, see [D.E. 57-1] 9, but such knowledge is legally insufficient to prove pretext. See Haulbrook, 952 F.3d at 703. Moreover, Amos does not provide any evidence of Welles's alleged state of mind or motivations other than his own allegations. Cf. Evans, 80 F.3d at 960; Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988); Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980). Furthermore, Amos also does not provide any evidence—other than his own testimony—that Henry Buick GMC, through Welles, "invented" its reasons for the employment actions. See Goldberg, 836 F.2d at 848; cf. [D.E. 57-1] 12–14; Amos Dep. 29, 49. Amos's own opinion, however, is not enough to create a genuine issue of material fact. See Evans, 80 F.3d at 960; Smith, 618 F.2d at 1067; Boden v. U.S. Amada Ltd., 978 F. Supp. 657, 659 (E.D.N.C. 1997).

Next, Amos argues that Henry Buick GMC allowed profanity at work, and that another employee directed profanity at Welles during an argument between the two. See [D.E. 57-1] 14–15.

12

Amos admits that he used profane language toward Welles on the March 6 call, and that his profanity violated Henry Buick GMC's policies. Furthermore, Amos does not provide any evidence that employees who used profanity at work, even an employee who directed profanity at Welles, were similarly situated to him. Moreover, Amos does not provide admissible evidence concerning this alleged argument between Welles and another employee. See Amos Dep. 49; cf. Fed. R. Civ. P. 56(c); McCray v. Pee Dee Reg'l Transp. Auth., 263 F. App'x 301, 306–07 (4th Cir. 2008) (per curiam) (unpublished); Anglin v. Progress Energy Serv. Co., 645 F. Supp. 2d 519, 528 (E.D.N.C. 2009). Amos also argues that Welles "targeted" two other employees for termination based on a disability. See [D.E. 57-1] 3. Amos, however, does not provide any admissible evidence to support his allegations. See Fed. R. Civ. P. 56(c).

Amos's allegations are not "sufficiently probative" of pretext in Henry Buick GMC's decision either to transfer him or terminate his employment. See Mereish, 359 F.3d at 336. Accordingly, the court grants summary judgment to Henry Buick GMC on Amos's ADA claim.

III.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 48]. Defendant may file a motion for costs in accordance with this court's local rules. The clerk shall close the case.

SO ORDERED. This _2_ day of March 2020.

JAMES C. DEVER III
United States District Judge

13